# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CORA E. BENNETT, individually and On
Behalf of All Others Similarly Situated,

    *Plaintiff*,

vs.

SPRINT NEXTL CORPORATION, GARY
D. FORSEE, PAUL N. SALEH, and
WILLIAM G. ARENDT,

    *Defendants.*

CASE NO. 09-2122-EFM

## MEMORANDUM AND ORDER

This is a class action suit brought on behalf of all persons who purchased or acquired Sprint Nextel Corp. ("Sprint Nextel") securities between October 26, 2006, and February 27, 2008. Plaintiffs allege that during the stated time, Defendants, Sprint Nextel, Gary Forsee, Sprint Nextel's former CEO and Chairman, Paul Saleh, Sprint Nextel's former CFO, and William Arendt, Sprint Nextel's former Senior Vice President and Controller, made a litany of false and misleading statements in violation of the federal securities laws, namely section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), the SEC's Rule 10b-5, 17 C.F.R. § 240.10b-5, and section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). This matter is now before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Doc. 37).

# I. BACKGROUND[1]

In August 2005, Sprint, the country's then third largest wireless carrier, acquired Nextel, the country's fifth largest carrier, for $37.8 billion. The price paid by Sprint exceeded the fair value of Nextel's assets by approximately $15.6 billion, an amount that Sprint allocated to goodwill.[2] At the time of the purchase, Defendants boasted that the consolidation of the two Companies would result in the realization of approximately $14.5 billion in synergies by 2008. Following the acquisition, Gary Forsee became the CEO of the combined Company and Paul Saleh became the CFO.

According to Plaintiffs, problems arose almost immediately after the deal was consummated. Plaintiffs contend that Sprint Nextel encountered difficulties integrating not only the constituent Companies' disparate wireless networks, but also many other facets of the two Companies' business operations. The combination of these difficulties Plaintiffs claim led to, among other things, the combined Company's customer base deteriorating. Plaintiffs allege that to coverup the Company's worsening condition, on October 26, 2006, Defendants embarked on a year and a half long campaign "to portray the customer losses as a temporary phenomenon, inflate the Company's financial results and create the impression that Sprint was realizing significant synergies from the consolidation with Nextel, attracting an ever increasing customer base of a higher credit quality and driving Sprint in a competitive direction."[3] Specifically, Plaintiffs contend that during this time, through press releases, conference calls, and SEC filings, Defendants falsely represented that the Company had

---

[1]The following facts are taken from Plaintiffs' amended complaint and, for purposes of analyzing Defendants' motion, are assumed to be true. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[2]"Goodwill is an intangible asset that represents the amount paid for a business over and above the value of the actual assets acquired and liabilities assumed. *See* Statement of Financial Accounting Standards No. 142 ("SFAS 142"), at Appendix F1, *available at* http://www.fasb.org/pdf/fas142.pdf.

[3]Doc. 33, at ¶ 22.

tightened its credit standards, that demand for the Sprint network was strong, that its mix of subscribers had improved, i.e., there was less reliance on sub-prime subscribers, that the integration of Sprint and Nextel and the rebanding of the Nextel network were progressing as planned,[4] and that the goodwill associated with the Nextel purchase was not impaired.

According to Plaintiffs, the Company's true condition was not revealed until after Dan Hesse was named CEO of Sprint Nextel on December 18, 2007, which was over two months after Defendant Forsee had resigned as the Company's CEO and Chairman.[5] On February 28, 2008, the Company disclosed that it was going to record a non-cash goodwill impairment charge of $29.7 billion in the fourth quarter of fiscal year 2007,[6] and that the impairment would result in a net loss for the quarter of $29.5 billion. The next day, Sprint Nextel filed its 10-K for FY 2007, which revealed that the Company had lost 683,000 post-paid subscribers in the fourth quarter, that the Company had increased credit extended in early 2007 and 2006, that earlier in the year the Company had adjusted its credit policy in certain markets in an effort to attract new subscribers, and that in late 2007 the Company had adjusted its credit policies and returned to policy standards similar to those in mid-2006.

Immediately following the preceding disclosures, the Company's stock price tumbled. In just two days, it dropped by over twenty percent. In addition to the stock price decrease, Standard & Poor

---

[4] In August 2004, Nextel reached an agreement with the Federal Communications Commission to relocate its 800 MHz spectrum – where Nextel's network operates – to other channels.

[5] Between the time that Forsee resigned and Hesse was named CEO, Defendant Saleh was the Company's acting CEO. Saleh left the Company on January 24, 2008.

[6] This write down reduced Sprint Nextel's goodwill to $963 million.

downgraded the Company's credit ratings. In light of the dismal fourth quarter results for FY 2007, the Company, for the first time in sixty-five years, did not declare a dividend.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "[7] "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[8] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[9]

In determinating whether a claim is facially plausible, the court must draw on its judicial experience and common sense.[10] All well pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.[11] Allegations that merely state legal conclusions, however, need not be accepted as true.[12]

---

[7]*Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twonbly*, 550 U.S. 544, 570 (2007)).

[8]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[9]*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[10]*Iqbal*, 129 S.Ct. at 1950.

[11]*See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[12]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Complaints asserting securities fraud claims are held to even a higher standard of pleading.[13] First, because securities fraud claims are fraud claims, these complaints must comply with Fed. R. Civ. P. 9(b).[14] Rule (9)(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[15] The Tenth Circuit has stated that, "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud."[16]

Second, these types of complaints must comply with the Private Securities Litigation Reform Act ("PSLRA").[17] Under the PSLRA, a "private securities complaint alleging a false or misleading statement must: (1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[18] In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,[19] the United States Supreme Court set forth what a plaintiff is required to allege to sufficiently plead a "strong inference" of scienter.[20] The District of Kansas recently explained the requirements set forth in *Tellabs*.

---

[13]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

[14]*See, e.g., Grubka v. WebAccess Int'l, Inc.*, 445 F. Supp. 2d 1259, 1267 (D. Colo. 2006).

[15]Fed. R. Civ. P. 9(b).

[16]*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (internal quotation marks omitted).

[17]Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat 737.

[18]*Tellabs, Inc.*, 551 U.S. at 321 (internal citations and quotation marks omitted) (alteration in original).

[19]551 U.S. 308.

[20]*Id.* at 322-24.

In prescribing a "workable construction" of the "strong inference" pleading standard, the Court first reiterated that a district court faced with a Rule 12(b)(6) motion to dismiss a section 10(b) action must accept all factual allegations in the complaint as true. Second, the Court admonished that district courts must consider the complaint in its entirety and that the appropriate inquiry is whether "*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Ultimately, the Court held that in determining whether the pleaded facts give rise to a strong inference of scienter, the district court "must take into account plausible opposing inferences" rationally drawn from the facts alleged and must engage in a "comparative evaluation" of those inferences. "To qualify as 'strong' within the intendment of § 21D(b)(2) . . . an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Stated another way, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[21]

### III. ANALYSIS

Defendants contend that Plaintiffs' claims should be dismissed because Plaintiffs have failed to meet the heightened pleading standards of the PSLRA and Rule (9)(B). The Court disagrees. After reviewing the parties' briefing, supplemental authority, and attached exhibits, the Court finds that Plaintiffs have indeed adequately pled a securities fraud claim. Plaintiffs' complaint alleges numerous actionable misstatements. Furthermore, Plaintiffs' allegations, when viewed as a whole, create an inference that these misstatements were made with scienter that is at least as compelling as any opposing inference of nonfraudulent intent. Nothing more is required at this stage in the litigation. As a result, the Court denies Defendants' motion in its entirety.

---

[21]*New Jersey v. Sprint Corp.*, 531 F. Supp. 2d 1273, 1279-80 (D. Kan. 2008) (internal citations omitted) (emphasis in original).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 37) is hereby DENIED.

**IT IS SO ORDERED**.

Dated this 6th day of January, 2011.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE